PRESENT:  All the Justices

JAMES DAVID EVERETT, II

OPINION BY
JUSTICE S. BERNARD GOODWYN
v.  Record No. 181238
October 31, 2019

KATHRYN JEAN TAWES

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether the Court of Appeals erred in affirming a circuit court

judgment that denied a request to retroactively modify a *pendente lite* spousal support award.

I.  BACKGROUND

On April 26, 2016, Kathryn Tawes (Tawes) filed a complaint for divorce in the Circuit

Court of the City of Williamsburg and James City County against James Everett, II (Everett).

Tawes also filed a motion for temporary spousal support pursuant to Virginia Ninth Judicial

Circuit guidelines and moved for a *pendente lite* hearing on the matter.

The circuit court held a hearing on the motion for spousal support *pendente lite* on

October 13, 2016.  At that hearing, Tawes testified that she has monthly expenses of

approximately $11,700.  Everett's tax returns were presented to the court.  They showed that his

average gross monthly income was approximately $33,000.

A chef by profession, Everett testified that he is a member of multiple limited liability

corporations (LLCs) that run several restaurants in the Williamsburg area.  He stated that he

earns income from his hours spent at these restaurants via a "guaranteed payment to

management," which totals $10,000 per month.  He explained that for purposes of taxation, he

has to report his share of ordinary income allocated to him from the LLCs, even if he does not

actually receive a cash distribution from the LLCs.  Everett testified that the $33,000 gross

monthly income figure inflated the amount of cash income he actually received because he did

not directly receive the ordinary income allocated to him as an LLC member, and the distributions he in fact received from the LLCs were primarily to pay his personal tax liability on the pass-through income allocated to him.

The circuit court commented that it needed an expert to understand Everett's tax returns. Tawes noted that, regardless of Everett's assertion regarding his actual cash flow, the Ninth Judicial Circuit spousal support guidelines require using the amount of gross income in determining the appropriate amount of spousal support.

On December 12, 2016, the circuit court entered a *pendente lite* order, which required Everett to continue to pay the mortgage and expenses for the marital home and Tawes' car payments and insurance, which totaled approximately $5,900 per month. The order also awarded Tawes an additional $7,831 per month in cash spousal support, retroactive to May 1, 2016. The circuit court calculated that Everett owed an arrearage of $46,986 upon entry of the order.

Everett paid the mortgage and car payment obligations, but only a portion of the cash spousal support obligation due and owing for December 2016 through March 2017, and none of the arrearage. Tawes subsequently requested, and the circuit court issued, a rule to show cause to Everett because of his failure to pay as required by the *pendent lite* order. In response, Everett filed a motion for the circuit court to reconsider the *pendente lite* spousal support award, arguing that the award amount improperly exceeded his ability to pay and Tawes' needs.

On March 28, 2017, the circuit court held a hearing on the rule to show cause and motion to reconsider the *pendente lite* spousal support amount.[1] Everett once again testified that all of

---

[1] The March 28, 2017 hearing was conducted by a different circuit court judge than the one who conducted the *pendente lite* hearing and entered the *pendente lite* spousal support order.

the LLC members have to pay tax according to their ownership interests in the LLCs and that they are allocated income from the LLCs for taxation purposes, but are not necessarily paid those allocations.

He also presented expert testimony concerning the income reported on his tax return. David Damiani (Damiani), a certified public accountant, testified that Everett's tax forms show his share of the LLCs' "net ordinary business income," but that those shares do not represent actual cash received by Everett. Damiani explained that the restaurant LLCs do not pay state and federal taxes themselves, and those taxes pass through to the LLC members. He testified that, where an LLC member receives no distributions or guaranteed payments from the LLC, the member would still have to pay taxes on his or her share.

At the conclusion of the evidence, Everett argued that, without any distributions, which are not guaranteed and are primarily used to pay taxes owed on his income from the LLCs, he regularly receives only his guaranteed payment of $10,000 a month. Therefore, the current *pendente lite* spousal support award was excessive. He also asserted that the circuit court had the authority to retroactively modify the *pendente lite* order.

Tawes argued that the circuit court had spoken through the *pendente lite* order "as it exists now." The circuit court responded to Tawes:

> I understand that. *And that is creating an issue for me*. Gentlemen, I do find it offensive to come in and imply that somebody's income is $600,000 [when] he is living in an outbuilding and there is absolutely no evidence of a lavish lifestyle or anything else and to come in and to point to certain areas in a tax return and say, see, you know, there is a lot more money here than meets the eye, when there is not, *absolutely no external evidence of that being true*.

(Emphases added.)

The circuit court declined to find Everett in contempt and dismissed the rule to show cause. The circuit court observed that the amount of *pendente lite* spousal support awarded and

3

the arrearage it created was an "injustice." Unsure whether it had the authority to retroactively change the *pendente lite* spousal support it previously ordered, the circuit court deferred ruling on the motion to reconsider, pending further briefing from the parties on whether a circuit court can retroactively modify a *pendente lite* spousal support order.

After the requested briefing, the circuit court held a hearing on June 6, 2017. At that hearing, concerning the circuit court's inquiry about its authority to retroactively modify a *pendente lite* spousal support order, the circuit court noted that there is "no answer to this question." The circuit court indicated that it preferred to avoid answering the question regarding its authority to modify the *pendente lite* order. It stated it would consider any unjust *pendente lite* arrearage or payments when ruling on equitable distribution.

The circuit court conducted a four-day trial on equitable distribution and spousal support beginning on July 25, 2017. At the conclusion of the evidence, before closing argument, the circuit court noted that the $66,437 owed pursuant to the *pendente lite* order

> is an arrearage . . . . Whether or not I have the authority to vacate that is just ground I don't want to cover. And as far as I know, the appellate courts have never addressed the authority to vacate that. And I don't want to do something at the expense of this family.

After closing argument, the circuit court stated from the bench:

> The arrearage of $66,437 remains. I am not going to change the pendente lite order . . . . That put Mr. Everett in a position where he flat out almost didn't have the ability to pay and allow himself anything to live on. I can only surmise that arguing Mr. Everett's . . . tax return is what caused this and gave an inaccurate ability – inaccurate picture of his ability to pay. But that arrearage stays in the case.

4

On November 1, 2017, the circuit court entered a final divorce decree,[2] ordering Everett to pay $4,800 in spousal support per month, declining to modify the *pendente lite* order retroactively, and ordering Everett to pay $66,437 in *pendente lite* spousal support arrearage.[3]

Everett appealed to the Court of Appeals, which affirmed the judgment of the circuit court and stated that the circuit court "did not err in denying [Everett's] request to modify the *pendente lite* order retroactively." The Court of Appeals premised its holding on the "settled" notion that "support payments vest as they accrue and may not be modified retroactively." *Everett v. Tawes*, No. 1838-17-1, 2018 WL 3351291, at *2 (July 10, 2018). Everett appeals.

## II. ANALYSIS

Everett argues that the Court of Appeals erred in affirming the circuit court's judgment because the cases cited by the Court of Appeals pertain to spousal support owed pursuant to a final decree, not an interlocutory order. He asserts that a circuit court has the authority to retroactively modify a *pendente lite* spousal support order because it is an interlocutory order. Additionally, Everett claims that the circuit court abused its discretion in refusing to retroactively modify the *pendente lite* spousal support ordered in this case because it mistakenly believed it did not have the authority to do so.

Tawes argues that Code §§ 20-109 and -112 bar circuit courts from retroactively modifying *pendente lite* spousal support orders. She also contends that the circuit court did not abuse its discretion in refusing to reconsider the terms of the *pendente lite* spousal support ordered in this case. She asserts that reasonable jurists could differ on the appropriate amount of

---

[2] The circuit court entered the original final decree on October 17, 2017.

[3] Tawes did not seek any spousal support arrearages due under the *pendente lite* order that may have accrued after March 2017.

5

spousal support, and there was sufficient evidence to support the amount of *pendente lite* spousal support awarded to her.

In determining this case, we must resolve two issues. First, does a circuit court have the power to retroactively modify a *pendente lite* order for spousal support? Second, if so, did the circuit court abuse its discretion in its consideration of the motion to reconsider the *pendente lite* spousal support awarded in this case?

### A. Authority to Modify a *Pendente Lite* Order Retroactively

Whether the circuit court has authority to modify its own order is a question of law we review de novo. *Hackett v. Commonwealth*, 293 Va. 392, 399 (2017).

### 1. A *Pendente Lite* Order Is Interlocutory

In a divorce proceeding, a *pendente lite* order awards temporary spousal or child support during the pendency of the suit, preserving the status quo of the parties until the final decree of divorce. Code § 20-103; Black's Law Dictionary 1368 (11th ed. 2019). Such an order is not a final order, is not directly appealable, and has no presumptive or determinative effect on the underlying cause of divorce. Code § 20-103; *Beatty v. Beatty*, 105 Va. 213, 214–15 (1906); *see also* Code § 17.1-405(3)(d) (permitting appeals from circuit court to the Court of Appeals for any final judgment of spousal support); Rule 1:1(b) (defining a final order). A *pendente lite* order is thus an interlocutory order. *Beatty*, 105 Va. at 214–15.

### 2. Interlocutory Orders Can Be Retroactively Modified

An interlocutory order "is always under the control of the court until the final decision of the suit, and it may be modified or rescinded, upon sufficient grounds shown, at any time before final judgment." *Freezer v. Miller*, 163 Va. 180, 197 n.2 (1934) (citation and internal quotation marks omitted).

6

The circuit court's power to modify an interlocutory order includes the power to correct an error therein:

> if it appears upon the face of the record that an interlocutory order or decree is erroneous and this fact is called to the attention of the trial court before final judgment or decree, *it not only has the power, but it is its duty, to correct the error*, if the rights of innocent third parties will not be adversely affected thereby.

*Kirn v. Bembury*, 163 Va. 891, 902 (1935) (emphasis added).

The power to correct an error in an interlocutory order includes the power to correct such error with retroactive effect:

> A judgment or decree when reversed is a mere nullity, and the party aggrieved has a right to be restored to what he has lost by reason of such erroneous decision. . . . This is unquestionably true, and such is the settled practice where the same [c]ourt abrogates its own erroneous decision; as in the case of a judgment reversed . . . *or an interlocutory decree reversed upon a rehearing*, or a final decree upon a bill of review.

*Flemings v. Riddick*, 46 Va. (5 Gratt.) 272, 280–81 (1848) (emphasis added). Thus, it is a general common law principle that a circuit court has the equitable power to retroactively correct errors in interlocutory and temporary orders while the court retains jurisdiction over the case.

### 3. There Is No Statutory Bar to Retroactive Modification of *Pendente Lite* Spousal Support Orders

A circuit court's equitable power can be subject to statutory limitation. *See, e.g.*, *Reid v. Reid*, 245 Va. 409, 413–15 (1993) (holding that a divorce statute precluded a circuit court's inherent power to order restitution for spousal support payments already paid). Contrary to Tawes' arguments, none of the divorce statutes cited by Tawes prohibits a circuit court from retroactively modifying a *pendente lite* order for spousal support.

There are several statutes relevant to modification of temporary or permanent spousal support, which have been cited by the parties. We will examine each of these statutory provisions in turn.

7

Code § 20-103(A) grants a circuit court the power to render a *pendente lite* order during a divorce case "at any time pending a suit . . . to compel a spouse to pay any sums necessary for the maintenance and support of the petitioning spouse." "An order entered pursuant to this section shall have no presumptive effect and shall not be determinative when adjudicating the underlying cause." Code § 20-103(E). Code § 20-103 does not mention modification of a *pendente lite* order. This silence is significant when contrasted with the language in Code § 20-107.1 concerning final decrees.

Code § 20-107.1 grants the circuit court authority to enter spousal support in its final decree of divorce. When the spouses have no minor children to support, Code § 20-107.1(H)(6) requires the final decree to state that spousal support obligations become "a judgment by operation of law" when due and unpaid. The judgments cannot be retroactively modified, unless authorized by Code §§ 20-110 or -112. *See Reid*, 245 Va. at 414.

This "judgment by operation of law" language was not included in Code § 20-103 regarding *pendente lite* orders. When the General Assembly uses specific language in one instance, but omits language on a similar subject elsewhere in the statute, we presume the difference was intentional. *David v. David*, 287 Va. 231, 237 (2014); *see also Zinone v. Lee's Crossing Homeowners Ass'n*, 282 Va. 330, 337 (2011) ("We . . . presume the legislature chose, with care, the words it used when it enacted the relevant statute." (citation and internal quotation marks omitted)). Therefore, we must presume that the absence of the "judgment by operation of law" language from the *pendente lite* spousal support statute manifests the General Assembly's intention for there to be a distinction between the authority of a circuit court to modify spousal support awarded in a final decree, as opposed to spousal support awarded in a *pendente lite* order, which is interlocutory and temporary in nature.

8

Code § 20-112 states, in relevant part:

> When the proceedings are *reopened* to increase, decrease or terminate maintenance and support for a spouse . . . the petitioning party shall give such notice *to the other party by service of process or by order of publication* as is required by law.  Except as provided by § 20-110, no support order may be retroactively modified, but may be modified with respect to any period during which there is a *pending petition* for modification in any court, but only from the date that notice of such petition has been given to the responding party.

(Emphases added.)[4]

Code § 20-112 presupposes the existence of a final decree.  The statute only applies when a party submits a petition for the *reopening* of proceedings to modify support for a spouse.  Proceedings would not have to be "reopened" unless they had been finally concluded.  Further reinforcing the final nature of the prior proceeding referenced in the statute, Code § 20-112 requires the party petitioning for reconsideration to give notice to the "*other party* by service of process or by order of publication."  (Emphasis added.)  This service-of-process provision indicates the re-initiation of a concluded suit or action, rather than the reconsideration of an issue in a pending suit.

Code § 20-112 does not apply to motions to reconsider an award of *pendente lite* spousal support in a pending case.  A *pendente lite* order is not final, and it is subject to modification while the circuit court retains jurisdiction over the case.  If a *pendente lite* award is still in effect and subject to modification, "the proceedings" are open and ongoing.  Code § 20-99 requires motions *during* a divorce suit to be served on the "counsel of the opposing party," which may include a pro se party, but does not require a petition, service of process on a represented party, or an order of publication to proceed with a motion.  If a litigant in an ongoing divorce case

---

[4] Code § 20-110 terminates spousal support where the supported spouse remarries and entitles a payor spouse to restitution for any support paid without notice of remarriage.

9

wanted a court to modify a *pendente lite* award, he or she would merely need to file a motion in the circuit court and serve the counsel of record as provided in Rule 1:12 and Code § 20-99.

Finally, Code § 20-109(A) provides:

> Upon *petition* of either party the court may increase, decrease, or terminate the amount or duration of any spousal support and maintenance *that may thereafter accrue*, whether previously or hereafter awarded, as the circumstances may make proper. . . . The provisions of this subsection shall apply to all orders and decrees for spousal support, regardless of the date of the suit for initial setting of support, the date of entry of any such order or decree, or the date of any petition for modification of support.

(Emphases added.)

Although Code § 20-109(A) states it applies "to all orders and decrees for spousal support," its statutory context indicates that it applies only to spousal support orders entered pursuant to a final decree. Like Code § 20-112 analyzed above, Code § 20-109(A) applies when a party files a petition for modification, and presupposes the existence of a spousal support order within a final decree.

The scope of Code § 20-109 is guided by Code § 20-107.1. Code § 20-107.1(A) authorizes the circuit court to give spousal support "upon the entry of a [*divorce*] *decree*," and Code § 20-107.1(B) states that "[a]ny maintenance and support *shall be subject to the provisions of § 20-109*." (Emphases added.) There is no reference to Code § 20-109 in Code § 20-103. Unlike with spousal support ordered in a final divorce decree, the General Assembly did not require that *pendente lite* spousal support orders be subject to the provisions of Code § 20-109. Thus, Code § 20-109 applies to "[a]ny maintenance and support [upon the entry of a divorce decree]," as authorized by Code § 20-107.1; it does not concern *pendente lite* spousal support authorized by Code § 20-103.

10

In summary, although there are statutory impediments to the retroactive modification of spousal support awarded in a final decree, there are no such statutory impediments to the retroactive modification of *pendente lite* spousal support awards.

### 4.  Equitable Principles Apply Unless Statutorily Prohibited

While the divorce statutes limit a circuit court's power to modify spousal support pursuant to a final decree, *see, e.g.*, Code §§ 20-109, -110, and -112, they are silent on retroactive modification of a *pendente lite* spousal support order.  Where a statute is "absolutely silent on a matter, it is an axiomatic principle of statutory construction that in effectuating [legislative] intent courts are to fill the inevitable statutory gaps by reference to the principles of the common law."  *Union Recovery Ltd. P'ship v. Horton*, 252 Va. 418, 424 (1996) (alterations, citation, and internal quotation marks omitted).

The General Assembly has explicitly authorized this gap-filling role played by principles of common law in divorce proceedings.  Code § 20-99 provides that divorce, annulment, and affirmance suits "shall be *instituted and conducted as other suits in equity*; except as otherwise provided in this section."  Code § 20-99 (emphasis added).  Circuit courts thus have the authority to apply common law equitable principles in conducting divorce proceedings where the statutes are silent.  *See, e.g.*, *Eddens v. Eddens*, 188 Va. 511, 520–21 (1948) (holding that, where a divorce statute for contempt did not apply, the circuit court still had "inherent power to punish the defendant husband in a contempt proceeding"); *Griffin v. Griffin*, 183 Va. 443, 451 (1945) ("[A] divorce suit is conducted as other equity suits, and when warranted by the facts, a plea of *res adjudicata* may be filed in such a suit.").  Although a circuit court must find authority for divorce in a statute, *McCotter v. Carle*, 149 Va. 584, 594 (1927), Code § 20-99 represents the

11

General Assembly's authorization for circuit courts to fill statutory gaps when conducting a divorce suit.

In sum, a *pendente lite* order is interlocutory.  A circuit court has the equitable power to retroactively correct errors in interlocutory orders during the pendency of a lawsuit.  The divorce statutes are silent on retroactive modification of a *pendente lite* spousal support order, and the General Assembly has authorized circuit courts to fill statutory gaps in our divorce statutes by using common law equitable principles.  Therefore, a circuit court may, in its discretion, retroactively modify a *pendente lite* spousal support order prior to the entry of a final decree in a case.

### B.  Abuse of Discretion in Considering the Motion to Reconsider Modification of the *Pendente Lite* Spousal Support Award

Having concluded that a circuit court has the authority to retroactively modify a *pendente lite* spousal support award, we next consider whether the circuit court in the present case abused its discretion in its consideration of the motion to reconsider the *pendente lite* spousal support award and resulting arrearage that it initially awarded in this case.

Reconsideration of an interlocutory ruling is within the discretion of the circuit court. *Kirn*, 163 Va. at 900–01.  A circuit court's discretionary authority means it "has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011) (citation and internal quotation marks omitted).

> An abuse of discretion . . . can occur in three principal ways: when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment.

12

*Id.* (citation and internal quotation marks omitted). "[O]nly when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Sauder v. Ferguson*, 289 Va. 449, 459 (2015) (citation and internal quotation marks omitted).

Motions to reconsider are generally "not favored." *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 403 (1985). A motion to reconsider that seeks to vacate an interlocutory order is "not to be exercised arbitrarily." *Kirn*, 163 Va. at 901. "Usually, such motions are based upon error apparent on the face of the record, or for the purpose of introducing after-discovered evidence." *Id.* As to the former basis, the circuit court "not only has the power, but *it is its duty*," to correct such apparent error. *Id.* at 902 (emphasis added).

At the March 28, 2017 motion for reconsideration hearing, the circuit court noted that the *pendente lite* spousal support awarded to Tawes was "creating an issue," that there was "absolutely no external evidence" supporting the claim of Everett's ability to pay the *pendente lite* spousal support awarded, and that the spousal support award and its resulting arrearage were an "injustice." Unsure of its authority to retroactively modify the *pendente lite* spousal support it previously awarded, the circuit court declined to hold Everett in contempt and ordered the parties to brief the court further on whether it had the power to retroactively modify the *pendente lite* spousal support award.

The circuit court's doubts concerning its proper authority continued throughout the lawsuit. At the June 6, 2017 hearing, unconvinced by the parties' briefs, the court noted that there is "no answer to this question" concerning whether the court had the authority to retroactively modify the *pendente lite* spousal support, and indicated that it preferred to avoid answering that question.

13

At trial, the circuit court again observed that the *pendente lite* spousal support it previously awarded put Everett "in a position where he . . . didn't have the ability to pay and allow himself anything to live on," and his tax return gave an "inaccurate picture of his ability to pay." The circuit court noted that "the appellate courts have never addressed [this retroactive] authority" regarding *pendente lite* orders, and that the issue was "ground [it did not] want to cover." The circuit court accordingly declined to change the *pendente lite* spousal support amount awarded to Tawes and the corresponding arrearage owed by Everett. However, it ordered an amount of spousal support in the final decree that was substantially less than the amount awarded by the *pendente lite* spousal support award.

In short, the circuit court consistently voiced its doubts regarding its ability to retroactively modify the *pendente lite* spousal support, while repeatedly indicating that it believed the *pendente lite* spousal support award and the arrearage it created were unjust and improper. A circuit court's discretionary authority means it "has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not *influenced* by any mistake of law." *Landrum*, 282 Va. at 352 (emphasis added). The circuit court's decision to not reconsider the amount of *pendente lite* spousal support and resulting arrearage was apparently influenced by a mistake of law regarding the circuit court's authority to retroactively modify the amount of spousal support and arrearage awarded in the *pendente lite* order. Thus, the circuit court abused its discretion in refusing to reconsider modifying the *pendente lite* spousal support award amount.

### III. CONCLUSION

For the foregoing reasons, we hold that the Court of Appeals erred in affirming the judgment of the circuit court. The judgment of the Court of Appeals is reversed and this action

14

is remanded to the circuit court for consideration of the motion to reconsider *pendente lite* spousal support, in a manner consistent with this opinion.  We will deny both parties' motions for appellate attorney's fees and costs.

*Reversed and remanded.*
